UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | |
|---|---|
| A-1 TIMBER CONSULTANTS, INC., | ) |
| Plaintiff, | ) 3:10-cv-00260 JWS |
| vs. | ) ORDER AND OPINION |
| FRONTIER, INC., | ) [Re: Motion at Docket 8] |
| Defendant. | ) |

## I. MOTION PRESENTED

At docket 8, defendant Frontier, Inc. ("Frontier") moves pursuant to Federal Rule of Civil Procedure 67 and Alaska Statute § 34.35.290 for an order requiring plaintiff A-1 Timber Consultants, Inc. ("A-1") to deposit the proceeds of certain timber sales with the court. A-1 opposes the motion at docket 17. Frontier's reply is at docket 21. At docket 22, A-1 requests a hearing on the motion. Oral argument would not assist the court.

## II. BACKGROUND

This suit arises out of the harvesting of certain timber on Kodiak Island, Alaska. Frontier is an Idaho corporation, founded by Clarence and Molly Maxey, that does various construction, logging, and related marketing work. A-1 is a Washington corporation in the timber business. Frontier has recorded a claim of lien on approximately 5 million board feet (MMBF) of timber "being held at Lash Dock . . . in Kodiak, Alaska, for labor performed and assistance provided in securing the timber."[1] That lien was claimed pursuant to Alaska Statute § 34.35.235 (a)(1) and describes timber cut by A-1 pursuant to its contract with Leisnoi, Inc. ("Leisnoi Agreement").[2]

Important underlying facts are in dispute. Frontier maintains that it entered into an oral contract with A-1 whereby Frontier agreed to secure financing to fund the work performed under the Leisnoi Agreement in exchange for 25% of the profit.[3] Frontier also maintains that, at A-1's request, it "secured stevedores, SWAPA pilots, dredging, soundings and [performed] other invaluable tasks associated with the transportation and export of the Lesnoi . . . logs from the Lash [D]ock in Kodiak, Alaska to Asia."[4] Frontier also contends that it assisted A-1 in finding a buyer and negotiating sales contracts relating to the Leisnoi timber.

A-1 contends that it independently negotiated with several potential buyers and financiers and that, at the relevant time, "Maxey and Frontier could not provide any

---

[1] Doc. 1-1 at 1.

[2] Doc. 5 ¶ 7; doc. 9-7. The contract was entered into on May 7, 2010. Doc. 9-7.

[3] Doc. 6 ¶ 36.

[4] *Id.* ¶ 17.

-2-

Case 3:10-cv-00260-JWS   Document 25   Filed 12/17/10   Page 2 of 8

funds or identify any willing investors."[5]  A-1 denies that it entered into a contract with Frontier and maintains that it independently negotiated an agreement with K-MAC/MTX ("K-MAC") "for the sale of the first 10MMBF of timber."[6]  Pursuant to that agreement, "K-MAC agreed to loan [A-1] $100,000 and pay invoices as logs were delivered dockside in Kodiak."[7]  Although A-1 concedes that it continued to negotiate with Frontier regarding additional financing, it denies having ever made a binding offer or accepting an offer from Frontier.[8]

Frontier filed its claim of lien on September 21, 2010.  On November 16, 2010, A-1 filed this lawsuit seeking a declaratory judgment that the lien is invalid, injunctive relief from any future lien by Frontier, and a money judgment.  The suit asserts claims for violation of the non-consensual common law lien statute, violation of the Unfair Trade Practices Act, and intentional interference with business relationship.  Frontier counterclaimed for breach of contract, breach of option contract, promissory estoppel, unjust enrichment, fraudulent misrepresentation, non-disclosure, intentional interference with contract, defamation, foreclosure of its lien, and punitive damages.

---

[5]Doc. 17 at 4.

[6]Doc. 17 at 5.

[7]Doc. 17 at 5.

[8]Doc. 17 at 6.

## III. DISCUSSION

**A. Federal Rule 67 Does Not Provide an Adequate Procedural Vehicle for Frontier's Motion**

Federal Rule of Civil Procedure 67 provides that

> [i]f any part of the relief sought is a money judgment or the disposition of a sum of money . . . a party–on notice to every other party and by leave of court–may deposit with the court all or part of the money or thing, whether or not that party claims any of it.[9]

The rule's "purpose is to relieve the depositor of responsibility for the fund in dispute while the parties hash out their differences with respect to it."[10] "Rule 67 benefits the party that is holding funds or property in dispute, not the party that is claiming the funds."[11] Here, Frontier claims entitlement to the funds it seeks to have deposited. Rule 67 is not a proper procedural vehicle.

**B. Alaska Statute § 34.35.290**

Alaska Statute § 34.35.290 provides that "[t]he court . . . *may* . . . upon motion supported by affidavit showing that the property is liable to loss or destruction, order that property subject to a lien under AS 34.35.230 - 34.35.315 be sold by the peace officer before judgment is rendered, as personal property is sold under execution."[12] The statute requires that the proceeds of such sale be deposited with the court.[13] Although

---

[9] Fed. R. Civ. P. 67(a).

[10] *Cajun Elec. Power Coop. v. Riley Stoker Corp.*, 901 F.2d 441, 444–45 (5th Cir. 1990).

[11] *Qwest Corp. v. City of Portland*, 204 F.R.D. 468, 470 (D. Or. 2001).

[12] AS § 34.35.290(a) (emphasis added).

[13] *Id.* § 34.35.290(b).

-4-

there is no case law articulating an appropriate standard of review, it is clear that granting Frontier's motion would require this court to exercise its equitable discretion. An order requiring A-1 to deposit the proceeds from the sale of the Leisnoi timber with the court is akin to preliminary injunctive relief. The court will accordingly resolve the present motion in light of Frontier's likelihood of success on the merits.[14]

**C. Frontier Has Not Shown a Likelihood of Success on the Merits**

**1. Frontier Has Not Established an Entitlement to a Timber Lien**

Frontier makes only two arguments in support of its motion. First, Frontier argues that its claim of lien is valid. Second, Frontier argues that it is entitled to enforce its claim of lien.

Alaska's timber lien scheme is intended "to secure laborers, contractors, and subcontractors the amount due them for labor performed in producing, or furnishing lumber."[15] Alaska Statute § 34.35.235 states that "[t]he following persons shall have liens upon timber for the work done upon, or in obtaining or securing, or for services rendered in towing, transporting, hauling, or driving it: (1) a person who performs labor upon, or who assists in obtaining or securing timber."[16] Frontier argues only that "[i]t is clear from the facts set forth [in its motion] that Frontier, Inc. and Clarence Maxey were

---

[14] *See, e.g.*, *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) ("The proper legal standard for preliminary injunctive relief requires a party to demonstrate that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.") (internal quotations omitted).

[15] AS § 34.35.230.

[16] AS § 34.35.235(a)(1).

a [sic] contractor, subcontractor or laborer who provided work and services in obtaining, securing and transporting the" Leisnoi timber.[17]

Although there is no Alaska law directly on point, other state courts interpreting similar timber lien statutes have consistently found that those statutes were intended to protect actual laborers–those "who, by their labor and skill in some manner *connected with and incidental to conversion of timber into logs*, contribute to the enhanced value of the logs produced from the timber."[18] Certain alleged facts suggest that Frontier rendered services related to the transportation of the Leisnoi timber. For instance, Frontier alleges that it "identified and [worked] on transportation logistics for the timber" and that Mr. Maxey "singlehandedly secured the stevedores, SWAPA pilot, dredging, and sounding to ensure proper transport of the logs from Kodiak to Asia."[19] But Frontier's entitlement to a timber lien is dependent on its performance of labor upon, or assistance in obtaining or securing the subject timber.[20] For purposes of this motion, the court is skeptical that Frontier performed labor upon or assisted in obtaining or securing the Leisnoi timber within the meaning of § 34.35.235.

---

[17] Doc. 9 at 14.

[18] *Kidder v. Nekoma Lumber Co.*, 249 P.2d 754, 756 (Oregon 1952) (emphasis added). *See also Kish Equipment, LTD v. Xusa Forest Products, Inc.*, 723 P.2d 498, 503 (Wash. App. 1986) ("the legislature intended to provide protection by lien to those persons working at the site where logs are harvested and to those transporting the product from the woods").

[19] Doc. 9 at 7.

[20] AS § 34.35.235(a)(1).

In its reply brief, Frontier maintains that "Mr. Maxey clearly provided services and labor towards producing and furnishing timber."[21] In support of its position, Frontier submitted several e-mails not included with its motion and the affidavit of a worker on the Leisnoi project. Generally, a party may not introduce new evidence in reply.[22] However, even if the court were to consider Frontier's new evidence, the outcome would not change. Frontier's additional exhibits support the notion that Mr. Maxey, on behalf of Frontier, *arranged* for the transportation of the logs, necessary dredging, and stevedoring. Frontier's exhibits do not support the notion that he engaged in those activities, as required by the statute.

Frontier argues that the face of AS § 34.35.235(c) "provides that persons who provide labor and assist in the transport of the timber" meet the statute's criteria.[23] Paragraph (c) is more specific than that. It provides that "[t]he cook and other laborers in and about the logging or wood camp, the teamsters transporting the timber, and the laborers on roads and trails . . . used for the transportation of the timber are considered persons who assist in obtaining, securing, and delivering the timber."[24] Therefore, while Frontier is likely correct that "shipping and stevedoring fall within that arena," it has not made an adequate showing that Frontier or Mr. Maxey partook in those activities.[25]

---

[21] Doc. 21 at 6.

[22] *See Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 894–95 (1990).

[23] Doc. 21 at 5.

[24] AS § 34.35.235(c).

[25] Doc. 21 at 6.

**2. Disputed Issues of Fact Foreclose a Present Showing of Likely Success on the Merits**

Even were Frontier in a legal position which would afford it lien rights, it has not shown the requisite probable success on the merits which this court believes is required for the exercise of its equitable powers. The circumstances underlying the possible formation of a binding agreement, memorialization of that agreement, and the extent to which A-1 relied on Frontier's services are genuine issues of material fact that are in dispute.

## V.  CONCLUSION

For the foregoing reasons, Frontier's motion at docket 8 for an order requiring A-1 to deposit with the court the proceeds from the sale of the Leisnoi timber is **DENIED**. A-1's motion at docket 22, for a hearing on the motion at docket 8, is **DENIED**.

DATED at Anchorage, Alaska, this 17th day of December 2010.

/s/
JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE